OSBORNE v. GLAZIER.[1]

(Circuit Court, E. D. Pennsylvania. June 28, 1887.)

1. PATENTS FOR INVENTIONS—COMBINATION OF OLD DEVICES—INVENTION.
　　Letters patent 296,210 were granted to the complainant for an improvement in "circular knitting-machines," intended for the manufacture of "plush-back stockinet." The improvement consisted, primarily, in combining with the other parts of the machine a divided push-back and a "landing" wheel, and a "presser" wheel, situated where the push-back was intermitted or divided, which structure enabled him to elevate the "plush" thread by elevating the fabric, the fabric being then pushed down again to enable the subsequent acts of the machine to be performed. The improvement consisted in very slight changes in the old machine. The old machine had been found virtually unsuited to the use for which it was designed. The improved machine made plush-back stockinet successfully. Held, that, as the combination was novel, very useful, and productive of essentially a new result, it possessed patentable invention.

2. SAME—VALIDITY—EVIDENCE.
　　The presumption in favor of the validity of a patent, arising from the action of the patent authorities in granting it, can be overcome only by reliable and certain proof.

In Equity. Suit for infringement.
　Charles Howsen, for complainant.
　Jos. C. Fraley, for respondent.

BUTLER, J. The suit is for infringement of several claims of patent No. 296,210, for an improvement in circular knitting-machines, intended for the manufacture of "plush-back stockinet." The machine in use at the time was that patented by Kent and Leason. The invention is stated to be an improvement upon the mechanism of this machine, and consists essentially of the means provided for raising the "plush" thread up and over the barbs of the needles, in the process of manufacture. In the original machine this thread was raised by the instrumentality of what is called, in the Kent and Leason patent, a "blending" wheel, which is so constructed as to perform the double office of closing the barbs and lifting the thread over them, the fabric being kept down by a

---

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

bar, known as the "push-back," under which it passes. The machine, thus constructed, worked imperfectly,—to such a degree, indeed, as to be of little value. The trouble arose from the construction of the "blending" wheel, and its combination with other parts of the machine. It was found that irregularities in the material and fabric, coming within reach of this wheel, were caught, and the needles consequently bent and broken. As there are usually several sets of the wheels used upon one large needle head, the bending and breaking, and consequent embarrassment and loss, were very great. This serious defect of the Kent and Leason machine is proved by the witnesses on both sides. To avoid it, Osborne substituted for the "blending" wheel, two separate wheels, the one termed a "blending" wheel, which is placed on the inside of the needles, and in operation raises the "plush" thread, and also the fabric; and the other a "presser" wheel, which (placed on the outside) closes the barbs of the needles; and added a second "push-back," which operates to depress the fabric after the "landing" wheel has done its work. These two wheels are virtually formed out of the structure known as the "blending" wheel in the Kent and Leason machine.

Mr. Brevoort describes the change and its effects as follows: "Osborne, instead of using a blending wheel, and attempting to elevate the 'plush' thread by itself, divided his push-back so that the whole fabric could be forced up when it was desired to elevate the 'plush' thread, and then, by the second half of the push-back, be depressed again, so that the main thread could be introduced." Where the push-back was divided or intermitted, he introduced a "landing" wheel and "presser" wheel, in themselves well-known devices, but, so far as I know, never used for this purpose. The "landing" wheel is here used in connection with the "presser" wheel, elevating the fabric while the "presser" wheel closes the barbs of the needles where the push-back is divided, and thus, by elevating the fabric with the needle barbs closed, also elevated the "plush" thread, and the fabric is then pushed down again by the second section of the push-back. The operation, when performed in this way, is done with certainty and precision, and there is no liability, as in the use of a "blending" wheel, of having the parts catch or break, or cut the work. "Osborne's invention, therefore, consisted primarily in combining with the other parts of the machine a divided push-back, and a 'landing' and a 'presser' wheel, situated where the push-back was intermitted or divided, which structure enabled him to elevate the 'plush' thread by elevating the fabric, the fabric being then pushed down again, to enable the subsequent acts of the machine to be performed."

The very serious defects of the old machine, and the great value of the improvement, are admitted by the respondents. Osborne's claims are four in number, specifying the improvement in combination with parts of the old machinery. A single claim, or at most two, would have answered as well. While the application was not filed until October 1, 1883, the invention was made and reduced to practice on the fourth of June preceding. Although several defenses are stated in the answer, but two were seriously urged on the hearing: (1) Lack of pat-

entable subject-matter; (2) prior invention. There was some criticism of the claims; but it is sufficient to say that the suggestion of ambiguity and deception is not sustained. The improvement consists in very slight changes in the old machine,—simple in their character, and containing nothing new, except the combination. As we have seen, the old "blending" wheel embraced the elements of the two new ones. Wheels similar to these had been long in use in the common knitting-machine. Nevertheless, the combination was novel, very useful, and productive, essentially, of a new result,—the successful manufacture of "plush-back stockinet." I do not think it can safely be asserted that no invention is involved in effecting this change. The Kent and Leason machine had been found virtually unsuited to the use for which it was designed, —its imperfections had been experienced by, and had perplexed, many persons skilled in this branch of manufacture; yet no one save Osborne had discovered the remedy, (unless, indeed, it be Mr. Adams, of whose claims we will speak further on.) Like many of the most valuable discoveries and inventions made, this improvement seems very simple when made,—the remedy for the defect in the old machines quite obvious to ordinary observation, when pointed out. This case can be, and probably is, near the border line, but I cannot doubt that it is within the limits of invention.

The remaining defense—priority of invention—was principally relied upon on the argument. It is by no means free from difficulty, and was pressed by the respondent's counsel with great earnestness and ability. It is shown that the improvement was put on the respondent's machine in the summer of 1884,—first on a machine known as the "Scheppers." The testimony tends to show that the improvement was not copied, but made in pursuance of a conception of Mr. Adams. Precisely when it was conceived, or what the conception was prior to its embodiment, is not certain or important. It was not worked out or embodied until the attachment was made to the "Scheppers" machine. When was that? This is the material question. Considerable testimony has been produced by the respondent to prove that it was in the *latter part of May*, and consequently four or five days before the improvement averred by the patent, was made, and the complainant has called witnesses in answer. To make a written analysis of this testimony would involve more time than I can spare, and, when made, would be of no material value. I have read it, re-read it, and considered it with great care. While there is much tending to create serious doubt respecting the question involved, it does not seem to present such reliable and certain proof of anticipation as would justify the court in overturning the patent. The presumption arising from the action of the patent authorities must stand until repelled and overborne by this character of proof. To create doubt, however strong, is not sufficient. The question is one of dates,—always difficult to a party having the burden of proof, in the absence of written *memoranda*, or the existence of special circumstances which can be appealed to with certainty. Here the difficulty is greatly increased by the fact that the dates involved are close together, separated by an interim

of but four or five days. The respondent has no written *memoranda*, and while his witnesses all testify in positive terms, and two of them at least refer to circumstances which are supposed to fix the date when the improvement was attached, it is evident they are liable to be mistaken. I do not, indeed, find anything very material to the question that can safely be relied upon, except in the testimony of McQuade and Wetherell; and the testimony of neither, nor of both together, is entirely convincing, even when considered alone. When considered in the light of surrounding circumstances, the uncertainty is increased. The delay in utilizing the improvement, so valuable and important as it was, for so considerable a time after its discovery, is not satisfactorily explained. The failure to apply for a patent is inconsistent with the discovery and use at the time referred to; and the reason assigned for the failure to apply is unsatisfactory; it would, indeed, have been a better reason for urgency in the application. The testimony of Hibleston and Freeman, produced by the complainant, tends to increase the uncertainty. To reach this conclusion, it is not necessary to ascribe perjury or dishonesty to any of the witnesses.

I see no occasion to distinguish the claims in considering the question of infringement. Under the circumstances, the result must be the same whether the respondent's liability is referred to all the claims, or confined to a smaller number. The entire improvement is infringed, and the claims embrace no more.

A decree must be entered for the complainant.